NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0741
Shawn Mosley
v.
The State

On Appeal from the Superior Court of Tattnall County
No. 2020SUR208

Decided: June 30, 2026

MCMILLIAN, Justice.

Shawn Mosley, an inmate at Georgia State Prison, appeals his convictions for felony murder and related crimes in connection with the stabbing death of fellow inmate Adrian White.[1] On ap-

---

[1] The crimes were committed on December 3, 2019. In December 2020, a Tattnall County grand jury indicted Mosley for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of prohibited items by inmates (Count 4). «V1. 4» At a jury trial held in February 2022, Mosley was found guilty on all counts except malice murder (Count 1). «V1. 188» The trial court sentenced Mosley to serve life in prison for felony murder (Count 2) and a concurrent five-year term in prison for possession of prohibited items by inmates (Count 4). Count 3 merged with the felony murder for sentencing purposes. «V5. 62» Mosley timely filed a motion for new trial, which was amended in August 2023 to ask for a new trial because the trial transcript had not been timely prepared. «V1. 227» Following a hearing, the trial court entered an order granting the motion for new trial in January 2024 because the court reporter had failed to file the trial transcript by the due date ordered by the court. «V1. 261» In March 2024, the State filed a motion for reconsider-

peal, Mosley asserts that (1) the State's case consisted of "inconsistent, unreliable, and uncorroborated evidence"; (2) trial counsel was constitutionally ineffective in failing to seek a change of venue; (3) the trial court improperly reconsidered an order granting his motion for new trial; (4) the trial court gave "improper and confusing jury instructions" on unanimity, impeachment, and the aggressor doctrine; (5) the trial court abused its discretion by admitting highly prejudicial prior bad acts and character evidence under OCGA § 24-4-404(b) ("Rule 404(b)"); (6) the trial court erred by not allowing Mosley to testify about White's previous conviction for murder, thereby preventing Mosley from fully presenting his justification defense; (7) the prosecutor committed misconduct by improperly relying on prior bad acts during the trial and presenting victim impact statements during sentencing; (8) the trial had a number of cumulative procedural irregularities; and (9) a new trial should have been granted because of the extraordinary and prejudicial delay in preparing the trial transcript. For the reasons that follow, we affirm.

The evidence at trial showed that on the evening of December 3, 2019, Captain Dale Collins of Georgia State Prison was called to the cell occupied by Mosley and White. Upon arriving, Captain Collins saw blood in the cell and told Mosley to step back so that he could open the cell, but Mosley refused, saying "No, it's okay." After repeatedly refusing to comply for several minutes,

---

ation on the basis that the court reporter completed and filed the trial transcript on February 12, 2024. «V1. 270-71» In April 2024, the trial court "rescinded" the order granting the motion for new trial. «V1. 275» The motion for new trial was further amended in May 2025, and after an evidentiary hearing, the trial court denied the amended motion for new trial on November 3, 2025. «V1. 290, 303» Mosley timely filed a notice of appeal, and this case was docketed to the April 2026 term of this Court and submitted for a decision on the briefs. «V1. 1»

Mosley finally stepped back and was handcuffed. After entering the cell, officers observed that the inside of the cell was covered in blood and White, who was unresponsive on the floor, had no pulse and a wound to his chest. Dr. Redmond Donoghue, the medical examiner who conducted White's autopsy, testified that the cause of death was multiple stab wounds. Mosley was found to have a scrape above his left eye and a blood blister on his finger but otherwise no open wounds or bleeding of any kind.

While cleaning up the area the next day, correctional officer Robert Byrd found a bag on the floor outside the cell beside Mosley's cell, which contained two handmade knives. These knives were found to be consistent with the type of wounds White suffered. A hole was also found in Mosley's cell that went to the next cell over and was large enough for the knives to go through. Camera footage showed the bag with the knives being pushed under the door of the cell beside Mosley's cell around 10:15 a.m. on the day after the stabbing. DNA test results showed that blood found on the knives belonged to White.

At trial, Mosley testified that he and White were close friends until White began taking drugs, specifically methamphetamine, which Mosley claimed White had been taking every day in the days leading up to the incident while still in jail. Mosley testified that at that time White became paranoid and had a knife and that Mosley was afraid White would use the knife to attack him. On the evening of the stabbing, White swung the knife at him, a fight between the two ensued, and after fighting for the knife, White "just dropped." Mosley said that he did not intend to kill White but feared for his life, as he knew that White was in prison for murder. Mosley denied being told to move out of the way by officers when they arrived after the stabbing and claimed that the blood in the cell was from his nose bleed. Denise Carter,

3

a GBI toxicologist, testified that White's blood test came back positive for methamphetamine, which was "20 times the therapeutic level."

1. Mosley argues that the trial court erred in denying Mosley a new trial because the State's case consisted of "internally inconsistent, unreliable, and uncorroborated evidence."

Although it is not entirely clear what the basis of Mosley's claim is, to the extent that Mosley is arguing that the evidence was insufficient as a matter of constitutional due process, that claim fails. When this Court reviews the sufficiency of the evidence as a matter of constitutional due process, we review the evidence in the light most favorable to the jury's verdict and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 US 307, 319 (1979). "This limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Wilkerson v. State*, 317 Ga. 242, 245 (2023) (quotation marks omitted).

Mosley argues that the evidence was not sufficient because none of the witnesses relied on by the State observed the altercation between Mosley and White, defense testimony "established that Mosley sustained injuries consistent with defensive conduct," and the GBI toxicologist testimony established that White had high levels of methamphetamine in his blood, which is associated with violent paranoia and hallucinations. And Mosley claims that the State failed to conduct forensic testing on the alleged weapons or blood evidence and that there was testimony about contraband weapons and photographs without collecting or authenticating the evidence.

4

However, no eyewitness evidence is necessary for the evidence to be sufficient. See *Nunnally v. State*, 319 Ga. 701, 708 (2024) ("'[A]lthough the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence.'" (quoting *Plez v. State*, 300 Ga. 505, 506 (2017)). And contrary to Mosley's argument that the State failed to test the alleged weapons or blood evidence, the record shows that the State tested the blood found on the weapons and confirmed that the blood on the weapon was White's blood. Finally, to the extent Mosley claims that the evidence was insufficient because of evidence that should not have been admitted, when reviewing the sufficiency of the evidence, we take the evidence as it was presented at trial. See *Welbon v. State*, 301 Ga. 106, 107 n.2 (2017) ("When we consider the legal sufficiency of the evidence under *Jackson* …, we consider all of the evidence presented at trial, without regard to whether some of that evidence might have been improperly admitted."); *Cowart v. State*, 294 Ga. 333, 343 (2013).

The record shows that the evidence, as admitted, was sufficient as a matter of constitutional due process to support Mosley's convictions for felony murder based on aggravated assault[2] and possession of prohibited items by an inmate.[3] The State presented evidence that the guards at Georgia State Prison responded to White and Mosley's cell, where they found White dead

---

2 OCGA § 16-5-1(c) provides: "A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-21(a)(2) in turn provides: "A person commits the offense of aggravated assault when he or she assaults … with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]"

3 OCGA § 42-5-18(c) provides: "It shall be unlawful for an inmate to possess a gun, pistol, or any other weapon[.]"

from multiple stab wounds and Mosley physically unscathed, save for a scrape above his left eye. Investigators also testified to finding the murder weapon in a bag that had been found in front of the cell adjacent to White and Mosley's; the blood on the knife tested positive for White's DNA. Regarding Mosley's justification defense, that defense was based solely on Mosley's self-serving testimony, and "[q]uestions about the existence of justification are for the jury to resolve, and the jury may reject any evidence in support of a justification defense and accept that a [killing] was not done in self-defense." *Goodson v. State*, 305 Ga. 246, 248 (2019). Mosley's sufficiency argument amounts to "nothing more than his disagreement with the credibility determinations made by the jury." *Harrison v. State*, 283 Ga. 518, 520 (2008).

To the extent that Mosley is challenging the qualifications and methodology of forensic pathologist Dr. Donoghue, Mosley points to nothing in the record where he challenged Dr. Donoghue's qualifications or scientific methodology, nor does he point to any particular testimony by Dr. Donoghue that should have been excluded. Assuming Mosley has preserved this error for ordinary appellate review, he has failed to meet his burden of showing error. See *Pierce v. State*, 319 Ga. 846, 855 (2024) ("Because Appellant has not specifically identified the objectionable testimony, has not included any meaningful legal analysis, and simply makes vague assertions of error and cites to one large chunk of the transcript, he is not entitled to a review of this claim." (cleaned up)); *Swindle v. Swindle*, 221 Ga. 760, 763 (1966) ("In order for this court to determine whether or not a trial judge erred in admitting evidence we must be able to determine what evidence is claimed to have been illegally admitted and what objection was made to the evidence at the time it was admitted."). See also *Henderson v. State*, 304 Ga. 733, 739 (2018) (Nor is it "this Court's job to cull the record on behalf of [an appellant] to

find alleged errors."(cleaned up)).

Finally, to the extent that Mosley argues that the trial court should have granted a new trial under OCGA §§ 5-5-20 and 5-5-21, which is often referred to as "the general grounds," this claim fails. The decision to grant a new trial on the general grounds is vested solely in the trial court. See *Muse v. State*, 316 Ga. 639, 653 (2023). Because the record reflects that the trial court understood and exercised its discretion to not grant a new trial on the general grounds, this claim presents nothing for us to review. See id.

2. Mosley claims that the trial court erred in denying his motion for new trial because his trial counsel rendered constitutionally ineffective assistance by failing to seek a change of venue.

During voir dire, the State asked whether there was "anyone on this panel that thinks just because you're incarcerated … that whatever happens to you is … because you're an inmate" and whether anyone "believes that just because you're an inmate … that you don't have a right not to be attacked, stabbed, or killed." Potential Juror No. 3 indicated that she believed those statements. She was then brought to the bench, where a colloquy was held between her, the attorneys, and the court so as to not "taint the panel." After clarifying the question, Potential Juror No. 3 again stated that she believed "you shouldn't waste taxpayers money on [inmates]." She further stated that she could not be a fair and impartial juror because "God judges. I don't. That's my religion." The State then asked that Potential Juror No. 3 be excused, trial counsel did not object, and the court excused Potential Juror No. 3.

To prevail on a claim of ineffective assistance of counsel, Mosley must show both that counsel's performance was professionally deficient and that he suffered prejudice as a result. See

7

*Strickland v. Washington*, 466 US 668, 687 (1984). To establish deficiency, Mosley must demonstrate that counsel "performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Evans v. State*, 315 Ga. 607, 611 (2023). Because "[t]he law recognizes a strong presumption that counsel performed reasonably," Mosley must show that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id. (quotation marks omitted). To satisfy the prejudice prong, Mosley must show that, but for counsel's deficient performance, there was a "reasonable probability" that the result of the trial would have been different. *Heyward v. State*, 319 Ga. 588, 592 (2024) (punctuation omitted). If Mosley fails to satisfy either prong of the *Strickland* test, we need not address the other. See *Strickland*, 466 US at 697.

Because "trial counsel cannot be deficient for failing to file a meritless motion, [the appellant] would have to show that a motion to change venue would have been granted had counsel made the motion." *Mims v. State*, 304 Ga. 851, 858 (2019). "For a request of a change of venue to be granted, the movant must show either that the trial setting is inherently prejudicial or that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." *Burks v. State*, 322 Ga. 865, 878 (2025) (quotation marks omitted).

Mosley argues that the venue was inherently prejudicial because the prison is located in the community and that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible, pointing to Potential Juror No. 3's comments. However, those comments were made by one potential juror out of the hearing of the other jurors, and Mosley points to no evidence supporting the assertion that the prison's location in

8

the community made the setting of the trial inherently prejudicial. See *Mims*, 304 Ga. at 859 (venue not inherently prejudicial despite widespread pre-trial publicity where the publicity did not contain "information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility"). Moreover, the comments of one potential juror who was excused does not support that the "jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." *Burks*, 322 Ga. at 878. See *Mims*, 304 Ga. at 859 ("[The appellant] cites the comments of four prospective jurors, at least two of whom were excused for cause for admitting they had a fixed opinion about [the appellant]'s guilt. As to the other two, one juror said that he had an opinion on the case, but did not respond when the jury pool was asked whether anyone would have a problem remaining impartial or deciding the case based only on the evidence. The fourth juror merely said she heard about the case[.] … Neither of those two jurors was selected. Given this evidence, [the appellant] cannot establish actual prejudice."). Because any motion to change venue on these grounds would have been meritless, trial counsel was not deficient for failing to make the motion. See id.

3. Mosley argues that the trial court erred in allowing a senior judge to rescind a previously entered final order granting Mosley a new trial, in violation of the doctrine of res judicata, principles of finality, and established Georgia law governing judicial authority and hierarchy.

This case was originally assigned to the Chief Judge of the Atlantic Judicial Circuit. However, a senior judge presided at Mosley's trial. After Mosley filed the amended motion for a new trial on the basis of lack of transcripts, the Chief Judge signed an

order granting the motion on January 24, 2024. The State subsequently filed a motion for reconsideration once the court reporter completed the trial transcripts a few weeks after the motion for new trial was granted, and on April 2, 2024, the senior judge vacated the grant of the motion for new trial because the trial transcripts had been completed. Thereafter, Mosley amended his motion for new trial and a hearing was held, after which the amended motion for new trial was denied.

Mosley has failed to show that there was any error in the senior judge reconsidering the grant of a new trial. Our precedent makes clear that a trial court may set aside a judgment for a "meritorious reason," such as "for irregularity, or because it was improvidently or inadvertently entered" and "for the purpose of promoting justice" within the same term in which the judgment is entered. See *Pope v. Pope*, 277 Ga. 333, 334 (2003) (cleaned up). The trial court acted within its jurisdiction to reconsider the grant of the motion for new trial within the same term of court in which it was granted. See OCGA § 15-6-3(4)(F) (explaining that the terms of court for the Superior Court of Tattnall County begin on the third Monday in April and October). Furthermore, "there is no prohibition on a successor judge deciding a new trial motion." *Wilson v. State*, 302 Ga. 106, 109 (2017). See also *Weathersby v. State*, 263 Ga. App. 341, 343 (2003) (no error where trial court assigned a senior judge to rule on defendant's motion for new trial).

4. Mosley argues that the trial court erred "by issuing improper and confusing jury instructions regarding unanimity, impeachment of witnesses, and the aggressor doctrine, thereby misleading the jury, expressing judicial opinion on disputed facts, and violating Mosley's right to due process and a fair trial."

Regarding unanimity, the court charged: "[I]n order to return a verdict, all jurors must agree upon the verdict. In other words, your verdict must be unanimous." During jury deliberations, the jury asked the court whether a "not guilty verdict require[s] a unanimous decision." The court directed that the bailiff respond by saying "simply tell them, yes, it needs a – we need to have a unanimous verdict. Don't tell them anything else." For impeachment of witnesses, the court charged that "to impeach a witness is to prove such witness is unworthy of belief. A witness may be impeached by disproving the facts to which the witness testified or by proof … of contradictory statements previously made by the witness as to matters relevant to his or her testimony and to the case." Regarding being the aggressor, the court charged that "[a] person is not justified in using force if he was the aggressor."

Because Mosley did not object to any of these charges, this enumeration is reviewed for plain error. See OCGA § 17-8-58(b) (providing that the failure to timely object to an allegedly improper jury instruction "shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties"). To determine whether there is plain error,

> [f]irst, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings.

11

> Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. If one prong of the plain error test is not satisfied, we need not address the other prongs of the test.

*Campbell v. State*, 320 Ga. 333, 348 (2024) (cleaned up).

The trial court properly instructed the jury during the charge and in response to the jury's question that any verdict, including a verdict of not guilty, needed to be unanimous, so there is no clear or obvious error. See *Drayton v. State*, 297 Ga. 743, 748 168 (2015) ("[I]t is permissible to instruct a jury that any verdict that it does agree on must be unanimous." (quoting *Dukes v. State*, 290 Ga. 486, 489 (2012)). Regarding the impeachment instruction, the instruction that "to impeach a witness is to prove such witness is unworthy of belief" merely defines what impeachment is and is a correct statement of the law, so there is also no clear or obvious error in this instruction. See *Jackson v. State*, 305 Ga. 614, 621–22 (2019); *Sapp v. State*, 271 Ga. 446, 464 (1999) ("To impeach a witness is to prove the witness is unworthy of belief." (quotation marks omitted)). Finally, Mosley's argument that the trial court improperly instructed the jury that Mosley was the aggressor is belied by the record. Mosley does not point to any part of the record to support this argument, and our review shows that the trial court never instructed the jury that Mosley was the aggressor, so the trial court did not commit plain error in this regard.

5. Mosley argues that the trial court erred in admitting highly prejudicial prior bad acts and character evidence under Rule 404(b).

Before trial, the court heard motions on the admissibility of two prior bad acts arising from Mosley's time at Ware State Prison: a stabbing committed by Mosley and a "shakedown" resulting in finding two "improvised weapons" in Mosley's possession. The court ruled that evidence of these prior incidents was admissible to show intent. Regarding the prior stabbing, Hope Salinas, an investigator who worked for Ware State Prison, recounted that after the victim of the stabbing was treated and released from the hospital for his injuries, he reported to her that Mosley stabbed him with a knife multiple times and that Mosley had been acting strangely, "saying he was an evil spirit and that he had killed his daughter." After the stabbing, Mosley flushed the knife down the toilet. That case was still pending at the time this trial took place. Regarding the "shakedown," Jaja Taylor, Sr., an employee at Ware State Prison who was in charge of searching the prison, testified that he found two homemade weapons in Mosley's locker.

"We review a trial court's evidentiary rulings under an abuse of discretion standard of review[,] … [a]nd even where an abuse of discretion is shown, there are no grounds for reversal if the error did not affect a substantial right, and thus harm, the defendant." *Smith v. State*, 322 Ga. 881, 883 (2025) (cleaned up). Where "the alleged error is non-constitutional, we examine whether it is highly probable that the error did not contribute to the verdict by reviewing the record de novo and weighing the evidence as we would expect reasonable jurors to have done so." Id. at 883–84 (cleaned up).

Pretermitting whether there was any error in the admission of the other acts evidence, any potential error was harmless. The evidence of Mosley's guilt was strong, and Mosley's claim of

13

self-defense was weak, relying almost exclusively on his self-serving testimony. See *Moore v. State*, 307 Ga. 290, 292–94 (2019) (any error in admitting other-acts evidence under Rule 404(b) was harmless where "jury had reason to be skeptical of [the appellant's] theory of events offered at trial," which was contradicted by significant other evidence presented at trial); *Redding v. State*, 320 Ga. 107, 117 (2024) (holding that the admission of other-acts evidence was harmless where "[the appellant's] claim of self-defense was weak, relying only on his self-serving testimony" and where evidence of guilt was strong). The State presented evidence that corrections officers responded to White and Mosley's cell, White was dead and bloodied, blood was all over the cell, Mosley was uninjured, and Mosley prevented officers from rendering aid to White. The murder weapon was also found next to the cell adjacent to Mosley and White's cell on the day after the stabbing with White's blood on it. Further, Mosley's explanation of the incident was not consistent with other testimonial or photographic evidence. And the court issued a thorough, detailed instruction limiting the jury's consideration of the other acts evidence solely to the question of intent. Therefore, any potential error in the admission of the evidence was harmless because the evidence of guilt is strong, the evidence that Mosley acted in self-defense was weak, and the trial court gave a limiting instruction, which helped to ameliorate any potential unfair prejudice from the admission of the other acts evidence. See *Dickerson v. State*, 323 Ga. 389, 393 (2026) (admission of prior shooting was harmless because evidence of guilt was strong and the trial court provided proper limiting instructions).

6. Mosley argues that the trial court erred in excluding admissible and critical evidence of White's violent character, including evidence of White's prior murder conviction, thereby preventing Mosley from fully presenting his justification defense.

14

In connection with pretrial motions, trial counsel argued that evidence of White's murder conviction should be admissible. The court ruled at that time that evidence of the murder conviction would be excluded but allowed trial counsel to present witnesses to testify about White's reputation for violence and to give an opinion on whether White was a violent person. During trial, Mosley testified that he was afraid that White might use the knife on him since he had "seen Mr. White use a knife on somebody else." The State subsequently asked to approach the bench to clarify what Mosley would be allowed to testify about his knowledge of White's character, and the trial court ruled that Mosley could explain his state of mind during the incident. After the bench conference, trial counsel asked whether Mosley knew any "particular thing or any particular experience or knowledge that you personally had about Mr. White that made you feel a particular way?" Mosley responded that yes, White "was already locked up for murder."

Because the premise of Mosley's claim is incorrect in that Mosley was allowed to testify about White's murder conviction and that Mosley had seen White use a knife on someone else without objection, this enumeration fails.

7. Mosley argues that the trial court erred by "permitting prosecutorial misconduct," pointing to references to the uncharged prior incidents at Ware State Prison and the presentation of victim impact statements in what Mosley claims was an emotionally inflammatory manner. "When a defendant alleges a factually specific claim of prosecutorial misconduct, the defendant must show actual misconduct and demonstrable prejudice to his right to a fair trial in order to reverse his conviction." *Pierce*, 319 Ga. at 864 (cleaned up). Here, the disputed prior bad-acts evidence was ruled admissible, so referring to such evidence was not

15

"actual misconduct." Additionally, because Mosley did not object to the victim impact statements at sentencing, any argument regarding the victim impact statements is waived, and plain error review does not apply to sentencing. See *Blash v. State*, 318 Ga. 325, 337 (2024).

8. In two sentences, Mosley argues that "[t]he trial was marked by multiple procedural deficiencies, including failure to forensically test physical evidence, unresolved chain-of-custody issues, admission of unsupported expert testimony, and failure to investigate delayed medical response. The cumulative effect of these irregularities violated Mr. Mosley's due process rights under the Fourteenth Amendment which must be reviewed de novo."[4]     Mosley has provided no citations to the record or specified what specific evidence or irregularities he is referencing in his enumeration, nor has he made any meaningful legal argument. Therefore, Mosley has failed to carry his burden of showing that his due process rights were violated. See *Pierce*, 319 Ga. at 855; *Swindle*, 221 Ga. at 762; *Henderson*, 304 Ga. at 739.

9. Finally, Mosley argues that the trial court erred in rescinding the order granting him a new trial because the nearly 23 month delay in preparing the trial transcript violated due process, impaired Mosley's ability to amend his motion for new trial, and denied him meaningful appellate review. We review a claim that a delayed appeal constituted a due process violation under the four-part balancing test set forth in *Barker v. Wingo*, 407 US 514, 530 (1972). See *Harper v. State*, 318 Ga. 185, 188 (2024). "However, in a speedy appeal claim, unlike a speedy trial claim, the failure to show actual prejudice from the delay is fatal to the claim, even when the other three factors weigh in the appellant's

---

[4] This quotation contains Mosley's entire argument for this enumeration of error.

favor." Id. (quotation marks omitted).

Mosley claims that the delay in preparing the trial transcript "prevented timely amendment of the Motion for New Trial and compromised appellate strategy." However, a review of the record shows that after the trial transcript was prepared and filed, Mosley was able to amend the motion for new trial over a year later, and an evidentiary hearing was held on the amended motion. Because Mosley was able to amend the motion for new trial and does not make any showing as to how his appellate strategy was compromised because of the delay in filing the transcript, Mosley has not established actual prejudice from the appellate delay, and this enumeration fails. See *Payne v. State*, 289 Ga. 691, 695 (2011) (appellant's "generalized speculation about the delay's effect on witness memories and evidence is not the kind of 'specific evidence' required to show prejudice in the appellate-delay context"); *Morris v. State*, 308 Ga. 520, 525–26 (2020) (appellant failed to show prejudice from a delay based on obtaining a trial transcript because his allegations were mere speculation).

*Judgment affirmed. All the Justices concur.*